519 A.2d 1298

**James Arthur MILLER**

v.

**Joan Wood MILLER**

**No. 406, Sept. Term, 1986.**

Court of Special Appeals of Maryland.

Jan. 16, 1987.

2

**4**

Joseph C. Ruddy, Jr., Hyattsville, for appellant.

James W. Almand (Ayres, Jenkins, Gordy & Almand, P.A., on the brief), Ocean City, for appellee.

Argued ·before BLOOM, ROBERT M. BELL and WENNER, JJ.

ROBERT M. BELL, Judge.

In 1969, after nearly 11 years of marriage, Joan Wood Miller (wife), appellee/cross-appellant, filed an action in the Circuit Court for Prince George's County for a divorce *a mensa et thoro* from James Arthur Miller (husband), appellant/cross-appellee. She alleged constructive desertion. The court denied the divorce; however, on October 29, 1970, it awarded the wife custody of the parties' four minor children who then resided with her. The husband was ordered to pay $250.00 per month in child support. This amount was not broken down on a per child basis. The husband did not make the payments when due.

Prior to 1973, the wife initiated at least one contempt action against the husband, alleging his failure to comply with the child support order. In 1973, she initiated a criminal non-support action in Prince George's County. The husband was found not guilty. Thereafter, no further attempts were made in Prince George's County to enforce the child support order. Consequently, the amount of the arrears, at the time of the present action, had not been determined by any Court.

In August, 1984, the wife filed in the Circuit Court for Worcester County a bill of complaint for a divorce *a vinculo matrimonii*, in which she also sought alimony, child support arrearages, distribution of marital property, and a monetary award. At that time, all of the children, with the exception of the youngest child, were over 21 years of age. The youngest child was 18 years old as of April 18, 1984.

When the husband did not file an answer to the bill of complaint, the wife moved for a default judgment on Febru-

ary 6, 1985, and a copy of the motion was forwarded to the husband. The court entered the order of default on February 13, 1985, and the husband was notified of the court's action. The husband, on March 19, 1985 [1] filed a Motion To Strike Or Vacate An Order of Default. Following the filing of the wife's opposition and a hearing, held on April 15, 1985, the court denied the husband's motion as to the grounds for divorce, but allowed all other contested matters to be litigated at trial. The husband did not thereafter file an answer or other pleadings denominating and crystalizing the issues he proposed to raise and/or litigate.

Testimony was taken and arguments heard on September 24, 1985. Following receipt of memoranda from counsel concerning the issues raised at trial, the trial judge issued an Opinion and Decree on January 2, 1986. He ruled that: (1) the Marital Property Act did not apply; (2) the wife be granted an absolute divorce; (3) a sale in lieu of partition of the marital home located in Prince George's County be ordered; (4) the husband's request for contribution from the wife for principal, interest, taxes, and insurance payments made by the husband during the separation be denied; (5) the wife was entitled to a judgment for child support arrearages; (6) child support payments were to be paid by the husband until the youngest child reached the age of 21; and (7) the husband pay all of the wife's counsel fees and the costs of the suit. Both parties appealed from the judgment thus entered, raising, between them, seven issues:

1. Whether the trial court erred in refusing to vacate a default judgment while simultaneously fashioning a bifurcated implementation of the judgment that is without precedent in either rule or law, and, as such, constituted an abuse of discretion that denied the appellant an opportunity to plead a legitimate

---

1. The certificate of service attached to the motion was dated March 16, 1985; however, the pleading was not docketed by the court until March 19th.

**6**

grounds for divorce that would serve as a substantial and sufficient basis for an actual controversy as to the merits of the action.

2. Whether the trial court's refusal to vacate default judgment constituted an abuse of discretion that denied the appellant the right to challenge the venue of the court as to the sale in lieu of partition of the property of the parties, and as to child support arrearages.

3. Whether the trial court erred by ordering the appellant to pay child support payments beyond the age of majority when the appellee never pleaded before the court the issue of continued lump sum child support payments.

4. Whether the trial court erred in denying the appellant's request for contribution from the appellee for payments previously rendered by the appellant for principal, interest, taxes and insurance on the marital abode of the parties.

5. Whether the trial court's order directing the appellant to pay all of the appellee's counsel fees and costs of suit constituted an abuse of discretion.

6. Whether the trial court erred in limiting the judgment for child support arrearages to a period commencing one year prior to the filing of appellee's complaint.

7. Whether the trial court erred in ruling that the Marital Property Act was not applicable to the case.

Although we find no error in the court's ruling on the default judgment, we hold that the Marital Property Act does apply to this case. This necessitates that we discuss, for the guidance of the trial court on remand, the issues relative to the award of counsel fees and the costs of suit, the age of majority of the minor children, contribution, and the period of limitations for the recovery of child support arrearages.

### Default Judgment

Although the default judgment was entered by the court on February 13, 1985, the husband's motion to strike or vacate was not filed until March 19, 1985, 34 days later. In the motion, the husband proffered the existence of grounds,[2] *i.e.*, desertion and abandonment on the part of the wife, which would entitle him to a divorce. He also proffered that, were the default judgment stricken, he would allege these grounds in an answer which he would then file. Furthermore, the husband proffered that if permitted, he would move to strike the wife's pleadings or, in the alternative, move for a change of venue because prosecution of the case in Worcester County "represents bad faith or unjustified proceedings." Thus, asserting that he had a meritorious defense, he prayed that the default judgment be vacated or rescinded and the issues joined for trial.

Citing its untimely filing, the wife moved to strike the husband's motion, to which the husband responded by filing Defendant's Opposition To Plaintiff's Motion To Strike and/or Motion To Extend Time For Filing Defendant's Response To Order Of Default. Although admitting that his motion was untimely filed,[3] and acknowledging that the motion to extend time was filed after expiration of the specified time, the husband urged that the court nevertheless consider the motion because "the failure to file ... was due to excusable neglect" pursuant to Maryland Rule 1–

---

**2.** The wife alleged in her complaint, which was implemented by the default judgment, grounds of continuous, non-cohabitational separation since May 1, 1969, with no reasonable hope or expectation of a reconciliation, as the basis for the divorce. *See* Maryland Fam.Law Code Ann. § 7–103(a)(5).

**3.** Relying on Maryland Rule 1–203(a) ("In computing any period of time prescribed by these rules ... the day of the act ... default after which the designated period of time begins to run is not included.") and (c) ("Whenever a party ... is required to do some act or take some proceeding within a prescribed period after service upon the party of a notice or other paper and service is made by mail, three days shall be added to the prescribed period."), the husband's contention was that the Motion was due on March 18, 1985.

204(a)(3).[4] The wife's motion to strike was denied because although "[the husband's motion] was two or three days late", the court felt that:

"... the Motion to Vacate should be considered by the Court. In order to consider the Motion to Vacate, I have got to rule against the Motion to Strike.... On procedural grounds, I am not going to kick the defendant out of court, so to speak, on the issue, because his counsel was two or three days late.

After conducting a hearing on the Motion to Vacate, the court denied the motion as to the grounds for divorce. It reasoned that the husband's failure to answer was an admission that an involuntary separation did occur on May 1, 1969, and continued to the date of the hearing. On the other hand, it specifically determined that the husband was entitled to oppose the relief requested by the wife; thus, the court ruled that all issues, other than grounds for divorce, would be litigated at trial.

The husband urges that this approach was error since his motion clearly delineated, and the trial court's decision confirms, that he too had grounds for divorce. And, he says, his grounds were an absolute defense to the wife's grounds. The husband also complains that Worcester County was not the proper venue in which to try this divorce action, particularly those aspects of it relating to child support arrearages. Finally, the husband argues that the trial judge abused his discretion when he refused to find an agreement between counsel to the effect that the husband's counsel would be given ten (10) days notice before the wife's counsel filed a motion for default judgment.

---

**4.** Maryland Rule 1–204(a)(3) provides: "When these rules ... require or allow an act to be done at or within a specified time, the court, on motion of any party ... may ... (3) on motion filed after the expiration of the specified period, permit the act to be done if the failure to act was the result of excusable neglect." The excusable neglect alleged by the husband is the post office's failure timely to deliver his pleading which was mailed on March 17, 1985 by Express Mail-Next day Delivery.

Maryland Rule 2–613 permits the entry of a default judgment against a party when that party has failed to plead "as provided by these rules" and "notice informing the defendant that the order of default has been entered and that the defendant may move to vacate the order within 30 days after its entry" has been mailed to the defendant or his counsel of record. Rule 2–613(a) and (b). The party against whom an order of default has been entered "may move to vacate the order of default within 30 days after its entry. The motion shall state the reasons for the failure to plead and the legal and factual basis for the defense to the claim." Rule 2–613(c).

> "If a motion was not filed under section (c) of this Rule or was filed and denied, the court, upon request, may enter a judgment by default if it is satisfied (1) that it has jurisdiction to enter the judgment and (2) that the notice required by section (b) of this Rule was mailed. If, in order to enable the court to enter judgment, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any matter, the court may rely on affidavits, conduct hearings, or order references as appropriate, and, if requested, shall preserve to the plaintiff the right of trial by jury."

Rule 2–613(e).

■ Because the motion was filed more than thirty days after entry of the order of default, the court need not have considered it. In any event, the court did not err in ruling on the husband's motion to vacate. Concerning the grounds for divorce, as the wife points out, the fact that the husband had grounds for divorce does not in any way affect the wife's grounds. In short, the husband's grounds would not nullify the wife's entitlement to a divorce on her grounds. *See* Maryland Fam.Law Code Ann. § 7–103(b), (c), (d), and (e).

Nor does the husband's venue contention have merit. Even though the court specifically limited the denial of the

motion to the grounds for divorce, the husband did not thereafter raise the venue issue. Maryland Rule 2–322(a) provides:

> The following defenses shall be made by motion to dismiss filed before the answer, if an answer is required: (1) lack of jurisdiction over the person, (2) improper venue, (3) insufficiency of process, and (4) insufficiency of service of process. If not so made and the answer is filed, these defenses are waived.

At no time, either before or after judgment was entered, did the husband file a motion to dismiss any aspect of the wife's complaint for lack of venue. Thus, despite having very clear direction from the court as to the manner in which the case was to proceed, the husband simply did not challenge venue; nor did he file a counter-claim. *See* Maryland Rule 2–331(a). Section (d) of that rule provides:

> If a party files a counter claim or cross-claim more than 30 days after the time for filing that party's answer, any other party may object to the late filing by a motion to strike filed within 15 days of service of the counterclaim or cross-claim. When a motion to strike is filed, the time for responding to the counterclaim or cross-claim is extended without special order to 15 days after entry of the court's order on the motion. The court shall grant the motion to strike unless there is a showing that the delay does not prejudice other parties to the action.

This section thus permits a party to file a counter-claim more than thirty days after his answer is due, subject to the pleading being stricken at the motion of the opposite party. Therefore, the husband could have challenged and tested the parameters of the court's ruling within the context of the Rules of Procedure. He chose not to do so. We do not conclude that he was precluded by the trial judge from doing so.

Finally, the trial judge did not abuse his discretion when he refused to find an agreement between counsel. First of all, the testimony was *not* undisputed that such an agreement existed. The wife's counsel specifically denied such

an agreement, but giving the benefit of the doubt to the husband, asserted that notice had been given in any event. Second, the trial judge was not required to accept the husband's version of the case. His ruling thus cannot be determined on this account to have been an abuse of discretion.

### Counsel Fees and Costs of Suit

In his opinion and decree, the trial judge stated:

"Defendant and his counsel, from the filing of the case almost to its conclusion, adopted a pattern of obstructive and dilatory tactics verging on contemptuous conduct and the Court further finds that such tactics were adopted in bad faith and without justification."

Then, relying upon Maryland Rule 1–341,[5] he awarded the wife all of her counsel fees and the cost of suit. The husband, feeling aggrieved by this action, argues that the award of counsel fees and costs was clearly erroneous. He specifically challenges the trial court's findings of fact as well as its failure to grant a hearing on the issue, at which his opposition to the intended sanction could have been raised.

■ In divorce proceedings, ordinarily counsel fees and costs are to be awarded after the court has considered: "the financial resources and financial needs of both parties; and whether there was substantial justification for prosecuting or defending the proceeding", *see* Maryland Fam.Law Code Ann. § 11–110(c), and taken into account the factors of labor, skill, time, and benefit. *Sharp v. Sharp,* 58 Md.App. 386, 406, 473 A.2d 499 (1984); *Wallace v. Wallace,* 46 Md.App. 213, 229, 416 A.2d 1317 (1980).

---

**5.** Rule 1–341 provides:

In any civil action, if the court finds that the conduct of any party in maintaining or defending any proceeding was in bad faith or without substantial justification the court may require the offending party or the attorney advising the conduct or both of them to pay the adverse party the costs of the proceeding and the reasonable expenses, including reasonable attorney's fees, incurred by the adverse party in opposing it.

Whether to award such fees and costs is within the "sound discretion of the trial court, and such award shall not be modified unless it is arbitrary or clearly wrong". *Gravenstine v. Gravenstine,* 58 Md.App. 158, 182, 472 A.2d 1001 (1984). *See also* Maryland Fam.Law Code Ann. § 12–103,[6] pertaining to the award of costs and counsel fees in connection with child support arrearages. We observe that an award of counsel fees and costs may have been justified by application of these criteria.[7] The trial court did not, however, consider them.

■■■ Maryland Rule 1–341, upon which the trial judge relied, while applicable in divorce proceedings, may be utilized only when "the conduct of any party in maintaining or defending any proceeding was in bad faith or without substantial justification", it does not reach dilatory conduct of a party conducting a justifiable defense. It may be that some of the conduct of the husband, or his counsel, may have been undertaken in bad faith and/or a portion of the defense was unjustified. As to that portion, the rule was appropriately used. On the other hand, to the extent that the husband and his counsel acted in good faith and pursued justifiable defenses, and the record reflects that they did, the court's reliance on the rule was an abuse of discretion. The court does not, however, clearly delineate the basis for its order in this regard. We conclude that, even though there may be a basis for an award of *some*

---

**6.** Section 12–103(b) provides:

*Required Considerations.*—Before a court may award costs and counsel fees under this section, the court shall consider:

 (1) the financial status of each party;

 (2) the needs of each party; and

 (3) whether there was substantial justification for bringing or defending the proceedings.

**7.** Section 11–110(b) provides:

*Authority of court.*—At any point in a proceeding under this title, the court may order either party to pay to the other party an amount for the reasonable and necessary expense of prosecuting or defending the proceeding.

"Reasonable and necessary expenses" is defined to include (1) suit money; (2) counsel fees; and (3) costs. § 11–110(a)(3).

counsel fees and costs pursuant to the rule, the award of *all* such fees and costs is, on this record, arbitrary and clearly wrong. *Gravenstine*, 58 Md.App. at 182, 472 A.2d 1001.

On remand, the court must again consider whether, and to what extent it should award fees and costs pursuant to the rule. The court may also consider applying §§ 11–110 and 12–103.

### Marital Property Act

Relying upon *Athanason v. Athanason*, 48 Md.App. 231, 426 A.2d 16 (1981) and *Duskin v. Duskin*, 51 Md.App. 451, 443 A.2d 1010 (1982), the trial court ruled that the Marital Property Act, Maryland Fam.Law Code.Ann., §§ 8–201 et seq., did not apply to the case *sub judice*. The trial judge opined:

> In this case, different grounds for divorce are alleged in a different case. However, the Plaintiff is attempting to have this Court award alimony claiming the husband was the wrongful party for alimony purposes, for the identical reasons (constructive desertion) she has already litigated in prior case #1 in Prince George's County. She is attempting to have this court litigate the extent of arrearages arising from the Defendant's failure to comply with a court order for child support in prior case #1, which assertions she generally made in hearings in prior case #2—the criminal non support actions.
>
> It is clear to the Court that this case is but a continuation of the previously litigated divorce in Prince George's County even though a no fault ground is now alleged. Accordingly, the Court determines that the Marital Property Act does not apply.

The wife takes the opposite position. She asserts that the cases relied upon by the court are "clearly distinguishable". She contends that she did not delay filing for divorce in Worcester County in order to take advantage of the Act. Furthermore, she reminds us that her prior action was resolved when the Prince George's County Circuit Court, although granting her custody and child support, denied her

prayer for divorce *a mensa et thoro*. Therefore, she concludes, that case was not "pending" 14 years later when she filed the present action. The husband's position is essentially that of the trial court: The only difference between *Athanason* and the instant case is the length of time involved. He posits in support of this position, that had the case been brought in Prince George's County, it undoubtedly would have been given the same case number as the prior case.

We think the wife gets the better of this argument. In *Athanason*, this Court held that the Marital Property Act did not apply where, prior to the effective date of the Act, a bill of complaint for divorce *a mensa et thoro* had been filed and, thereafter, after the effective date, a supplemental bill for divorce *a vinculo matrimonii*, alleging the same grounds, was filed. We reasoned:

> We think the words "cases filed after January 1, 1979," contained in Section 2 of Chapter 794, *supra,* are quite plain, sensible and free from ambiguity. Appellee filed the original case prior to January 1, 1979. *When she filed her supplemental bill in this same case after January 1, 1979, it became a part of the original case.* The fact that the supplemental bill may set out a different "cause of action", as appellee maintains, is immaterial. The statute refers not to "causes of action" but to "cases", and we hardly think it needs citation to establish that the two are not synonymous: a cause of action is not necessarily a case, while a case must contain at least one, and often contains several, causes of action. And a supplemental bill is not a case. In our view the Legislature's choice of language here constitutes a clear expression of its intention to limit the effect of the "Property Disposition In Divorce and Annulment" Act to actual cases filed after the Act's effective date. (emphasis supplied)

48 Md.App. at 234–35, 426 A.2d 16.

*Duskin* involved a different factual posture. There, the plaintiff, having previously filed, prior to the effective date

of the Act, an action for divorce *a mensa et thoro* on the grounds of cruelty, which she had amended after the effective date of the Act to delete the reference to divorce *a mensa et thoro,* filed, also after the Act went into effect, a separate bill of complaint for divorce *a vinculo matrimonii,* alleging both the original ground pled and the parties' voluntary separation. Although the defendant's motion raising preliminary objection was denied, the separate action was consolidated with the previously filed case, then pending for trial. We affirmed the trial judge's refusal to apply the Act to the consolidated case. Observing that *Athanason* precluded application of the Act to the case filed prior to its effective date even though both parties had filed, after the Act's effective date, supplemental or amended bills of complaint for divorce *a vinculo matrimonii,* we held that the trial judge did not abuse her discretion. We explained:

"... when the Circuit Court for Montgomery County consolidated Equity No. 63525 and equity No. 67957, the court created one case. For purposes of analysis under Section 2 of the Marital Property Act, the original bill of complaint for that one case was the appellant's bill of complaint filed on June 23, 1978 and never dismissed. Just as the appellee's supplemental pleadings became "a part of the original case", *Athanason, supra,* at 234 [426 A.2d 16], so the appellant's bill of complaint filed on July 23, 1979 became tantamount to a supplementation of her original bill of complaint.

51 Md.App. at 460, 443 A.2d 1010. We found support for our conclusion in the similarity between the bill of complaint filed in the second action and the original bill of complaint:

"The appellant's cause of action was adequately set forth in her original bill of complaint, and no new cause of action was interjected by the second bill of complaint. Thus, the second bill constituted nothing more than an "emanation of the same cause of action" previously asserted, and it "relates back to the time of filing of the

original bill ... " *See Prince George's County v. Blumberg,* 44 Md.App. 79, 109–110, 407 A.2d 1151, *rev'd on other grounds,* (1979) applying this rule in the statute of limitations context.... "

51 Md.App. at 460–61, 443 A.2d 1010. We concluded: Rather than stating a new cause of action, the appellant's second bill of complaint differs from the original complaint only in its requested remedies, *i.e.* divorce *a vinculo,* and application of the Marital Property Act. The appellant's apparent motive for filing a second bill of complaint was to seek application of the Act, as indicated in appellant's opposition to the appellee's motion raising preliminary objection to the appellant's second bill of complaint. The appellant requested the lower court to deny the appellee's motion so that she could "seek ... the relief afforded by the new Domestic Relations Law of Maryland, Chapter 794, Acts of 1978". At trial the appellant was provided an opportunity to seek such relief, but the lower court did not err in refusing to provide the appellant with the benefits of the Marital Property Act.

Id., 51 Md.App. at 461, 443 A.2d 1010.

■ The factual pattern in the instant case is significantly different from that in both *Athanason* and *Duskin.* Aside from the time factor, in neither *Athanason* nor *Duskin* had the original case been resolved, either by dismissal or trial, prior to the filing of a separate case. Thus, in both cases, the prior case was "pending" when the subsequent action was taken. Here, the wife's prior case for divorce *a mensa et thoro* had been tried and that relief denied. That she was afforded some relief in that case, *i.e.,* child custody and support, does not mean that the case was "pending" when the present case was filed. Nor does it appear that the wife chose to bring this action in Worcester County, 14 years after her original action had been brought and dismissed, with the purpose to "seek application of the Act", a consideration of some importance in *Athanason* and *Duskin.* We hold, therefore, that the Marital Property Act *does* apply to this case.

### Child Support Arrearages

Although not without some equivocation as to his right to do so, the trial judge, relying upon *Green v. Green*, 288 Md. 127, 415 A.2d 1131 (1980), awarded the wife child support arrears for a period not to exceed one year prior to the filing of the case. He did so, without prejudice to the wife's right to attempt to collect additional arrearages or to litigate in another forum her claims for back child support for periods beyond the one year limit imposed by court.

In the husband's view, the ruling to allow any amount of child support arrearages is improper because the court did not have the right to entertain or decide the issue, it being properly assertable only in Prince George's County. For this contention, he relies upon *Sharp v. Sharp*, 58 Md.App. 386, 473 A.2d 499 (1984). The wife, on the other hand, contests only the limitation placed upon the arrearages awarded. She proffers that the appropriate limitations period, assuming that the issue has been preserved, is 12 years, as enunciated in *Bradford v. Futrell*, 225 Md. 512, 171 A.2d 493 (1961).

Addressing the threshold issue, whether the court could properly entertain the child support arrearage issue, it is necessary that we review *Sharp* in some detail. In *Sharp*, the husband filed, on December 26, 1969, a bill of complaint for divorce and child custody in the Circuit Court for Frederick County. The wife did not file a cross-complaint. The court denied the husband's prayer for divorce and dismissed his complaint; however, it awarded him custody of the parties' minor child. The wife thereafter filed on May 20, 1980, in the Circuit Court for Montgomery County, a bill of complaint for divorce *a vinculo matrimonii*, custody, alimony, attorney's fees, and an adjudication of the parties' property rights. The husband's motion raising preliminary objection, or in the alternative to transfer venue, because of the pendency of an identical action in Frederick County, was, with the exception of the wife's action for child custody, denied. We affirmed. We said:

Appellant argues that appellee's failure to file a cross-complaint in the Frederick County's divorce proceedings demonstrated her desire to shop for a more desirable forum. We are unaware of any rule requiring a person to file a cross-complaint for divorce. There is no question that appellee resided in Montgomery County when she filed her suit for divorce. Maryland Cts. & Jud.Proc.Code Ann. § 6–202 (1980 Repl.Vol., 1983 Cum.Supp.) confers venue in divorce proceedings where the plaintiff resides. Accordingly, since there was nothing further to litigate with regard to appellant's request for a divorce in Frederick County, appellee was within her rights to bring an action in the County where she resided. Appellant's Motion Raising Preliminary Objection was correctly denied.

*Id.* [58 Md.App.] at 407, 473 A.2d 499.

■ *Sharp* is fully dispositive of the threshold issue. The wife resided in Worcester County, as did the remaining minor child. Therefore, Worcester County was a proper venue for the divorce action. *See* Maryland Cts. & Jud. Proc.Code Ann. § 6–202(1). Moreover, it was a proper venue for an action to recover child support arrearages, Maryland Cts. & Jud.Proc.Code Ann. § 6–202(5), especially where, as here, no action had been taken in Prince George's County for more than ten years. Just as the trial judge in *Sharp* did not err in refusing to permit a retrial of custody when the order granting custody had been entered by another circuit court not more than six months before, neither did the trial judge in this case err in proceeding to consider and resolve the child support arrearage question when no action was then pending in another court.

■ Before reaching the substantive issue, we must briefly address another preliminary matter. Because the court could not adequately determine the amount of arrears until it had determined which age of majority to apply, it properly considered and correctly decided that issue. *See Kramer v. Kramer,* 26 Md.App. 620, 339 A.2d 328 (1975). Address-

ing the interpretation of an agreement entered into prior to the effective date of Maryland Code Ann., art. 1, § 24, changing the age of majority from 21 to 18 years of age, we said:

> We think it obvious that in 1967 reasonable married persons, who had separated and had entered into an agreement for the support of their children, would have thought that that agreement was an agreement designed to satisfy, without the need of a court adjudication, the legal obligation of the supporting parent to his children, an obligation which at that time required support until the age of 21. We now hold that the use of words such as "child" or "children" otherwise unidentified, or a reference to a child by name, without further elaboration, in an agreement or in a decree relating to child support, dated prior to 1 July 1973, in the absence of a clear expression of contrary intent must have meant support for the parties' offspring at least until they attain the age of 21. The only meaning, which could reasonably have been within the contemplation of the parties at the time such an agreement was effectuated, was one that required support to be continued at least until the child attained 21 years of age. The same would be true for a similarly worded judicial decree providing for child support entered before the effective date of Art. 1, § 24.

*Id.* at 631–32, 339 A.2d 328. This logic applies with equal force to the case *sub judice.*

We now turn to the substantive issue, the period of limitations for recovery of child support arrearages. We observe at the outset that the trial judge clearly erred in relying on *Green. Green* involved the wife's attempt to have the court hold the husband in contempt for failing to make support and maintenance payments. The applicable period of limitations then existing for contempt actions was one year from the date that each support installment became due and remained unpaid. *See Green* 288 Md. at 136, 415 A.2d 1131.

■ After the decision in *Green,* the legislature, during its next legislative session, enacted ch. 649, Acts 1981, which added to Maryland Code Ann., Art. 16, a new § 5C,[8] and to the Courts & Judicial Proceedings Article, § 5–111.[9] The purpose of these new sections was to establish "a 3 year limitations for commencing a contempt-of-court action against a parent in default on court-ordered child support or against a spouse in default on court ordered spousal support." Thus, were *Green* applicable to this case, the applicable period of limitations would be three years, rather than one. But *Green* is inapposite. This was not a contempt case. There was absolutely no request on the part of the wife to hold the husband in contempt for failure to make child support payments. Rather, the wife sought a judgment for child support arrearages. The statute of limitations for contempt proceedings simply does not apply.

This case is controlled by *Bradford v. Futrell,* 225 Md. 512, 171 A.2d 493 (1961). There, in 1944, the decree divorcing the parties required the husband to pay the wife $20.00 per week for the support of the parties' four minor children. The wife instituted an action in April 1958 to recover child support arrearages accruing from shortly after the decree of divorce. The lower court, after a hearing, determined the husband's arrears to be $12,872.32 as of August 1, 1960 and passed a decree in that amount in favor of the wife.

---

**8.** Section 5C provided:
"A proceeding to hold a person in contempt of court for the person's default in payment of periodic child or spousal support under the terms of a court order shall be commenced within 3 years of the date each installment of support became due and remained unpaid." Maryland Fam.Law Code Ann. § 10–102 is the successor to this section, which was repealed by Acts 1984, ch. 296. § 10–102 is identical to former § 5C except that the term "periodic" has been deleted as a modifier of "child or spousal support."

**9.** Maryland Cts. & Jud.Proc.Code Ann. § 5–111, provided, and still provides, that "[a] proceeding to hold a person in contempt of court for the person's default in payment of periodic child or spousal support under the terms of a court order shall be commenced within 3 years of the date each installment of support became due and remained unpaid."

The husband appealed, claiming that the wife's entire claim for child support arrearages was barred by laches or limitations.

The Court of Appeals affirmed the judgment.[10] It held that the applicable period of limitations was that prescribed for specialties, set out in former Maryland Code Ann. art. 57, § 3 (present Maryland Cts. & Jud.Proc.Code Ann. § 5–102(a)). The Court relied upon *Marshall v. Marshall,* 164 Md. 107, 116, 163 A. 874 (1933), in which a support decree was described as "an adjudication of liabilities thereafter maturing at stated periods [which u]pon a proper petition and order ... may be enforced by execution or attachment as to all unpaid installments which may have become due within the preceding twelve years," and *Winkel v. Winkel,* 178 Md. 489, 506, 15 A.2d 914 (1940). It noted that "... while Maryland does not follow the rule of some states that each installment for support becomes, when due, a final judgment on which execution may issue ... our view as to the nature of support payments is in harmony with the approach to limitations that prevails in most jurisdictions, that the statute of limitations begins to run against each installment of support payments from the date on which it accrues." (citations omitted) 225 Md. at 524, 171 A.2d 493. The Court also held that "the *original decree* providing for support of wife and children is not itself barred by the twelve year period of limitations applicable to judgments and decrees ...," *id.,* and that the right to recover arrearages more than twelve years old must be analyzed in the context of laches. *Id.,* at 525, 171 A.2d 493.

■ Applying the foregoing principles to the case *sub judice* leads to a clear result. The wife received an order from the Circuit Court for Prince George's County in 1970 requiring the husband to pay support payments in the amount of $250.00 per month. Because the attempt to

---

**10.** The Court did reverse the decree to the extent that it reflected an amount which was erroneously included in the decree.

recover such payments in a criminal contempt proceeding resulted in a not guilty finding in 1973, the arrearages to which this action relates are those accruing subsequent to the date of that action. There is then a child support order setting the amount of the payments due. The statute of limitations did not begin to run as to any payment until the payment became due. And because the statute of limitations for each payment is twelve years, the arrearages that the wife could recover are those for which the twelve year statute of limitations has not yet run.

On remand, the trial court, assuming there is a request to do so, may consider whether to modify, retroactively, the child support arrearages then due. *See Johnson v. Johnson*, 241 Md. 416, 420, 216 A.2d 914 (1966), citing *Bauman v. Bauman*, 239 Md. 379, 382, 211 A.2d 759 (1965); *Winkel v. Winkel, supra*, 178 Md. at 505, 15 A.2d 914; *Fainberg v. Rosen*, 12 Md.App. 359, 367–68, 278 A.2d 630 (1971).

## Contribution

■ Although noting that the husband "no where in the pleadings made any request for contribution though he presented evidence and in his memorandum argued that he was entitled to contribution with regard to a division of the marital property," [11] the trial judge acknowledged, in light of *Colburn v. Colburn*, 265 Md. 468, 290 A.2d 480 (1972) and *Crawford v. Crawford*, 293 Md. 307, 443 A.2d 599 (1982), that the husband's payment of principal, interest,

---

**11.** Our conclusion that the default judgment was properly entered and the husband's motion to vacate appropriately denied does not require that we determine that the issue of contribution should not have been presented to, or tried by the court. While ordinarily a default judgment is final as to the question of liability, in divorce cases, it may be entered "only upon testimony." *See* Maryland Rules S73 and S74. Moreover, where the relief to which the party obtaining the judgment is entitled remains to be determined, the defaulting party has the right to participate in any hearing for that purpose and to present evidence on the issue. *See* Matter of Williams, 464 A.2d 115, 119 (D.C.App. 1983).

taxes and insurance on the parties' marital home,[12] entitled him to contribution from the wife. Notwithstanding, the trial judge did not order the wife to make contribution to the husband,

> finding specifically that the Defendant never made any demand for contribution and by failing to pay court ordered child support, limited the wife's ability to make such payments and thus the husband does not come into court with clean hands. Additionally, but more importantly, at no time prior to the hearing did the Defendant properly raise the issue of contribution and it appears to have been either a surprise at trial or an afterthought. In any event, under the circumstances of this case, to order such contribution would be inequitable....

Furthermore, the trial judge observed that if he were to order contribution by the wife, he would limit it to a period of three years prior to the filing of the action.

The husband's disagreement with this ruling is, to say the least, vehement. He characterizes the trial judge's refusal to order contribution an abuse of discretion and the reasons underlying it as "devoid of either statutory or judicial precedent".

The wife responds by emphasizing that "[f]rom the time appellee left the family home in 1969 until trial, [the husband] had not requested appellee to contribute to the family home expenses." Thus, she asserts that his request is untimely and, further, that it was improperly raised. She echoes the trial judge's ruling that it was, at least in part, barred by the statute of limitations. Additionally, she notes that she has been prejudiced by the delay inasmuch as she was prevented from making a demand of the husband for rent during the period that the husband occupied the prop-

---

**12.** The wife had sought contribution from the husband for his use of the property during the period of separation. The trial judge denied her request, finding that she had not been ousted from the marital home. He ruled that the wife's failure to prove constructive desertion in her first divorce action was *res judicata* as to the issue.

erty. And, finally, the wife contends that to allow contribution to the husband, given his failure to pay child support throughout the period of separation, would be inequitable.

 We agree with the trial judge that the facts and circumstances support the conclusion that the husband is entitled to contribution. The rule was reiterated and summarized in *Crawford:*

> "Generally, one co-tenant who pays the mortgage, taxes, and other carrying charges of jointly owned property is entitled to contribution from the other. *Aiello v. Aiello,* 268 Md. 513, 518–19, 302 A.2d 189, 192 (1973); *Pino v. Clay,* 251 Md. 454, 456–57, 248 A.2d 101, 102–03 (1968); *Hogan v. McMahon,* 115 Md. 195, 201–02, 80 A. 695, 698 (1911). This rule of co-tenancy applies equally to a tenancy by the entireties."

293 Md. at 309, 443 A.2d 599. For the latter proposition the Court cited and quoted from *Colburn,* 265 Md. at 474–75, 290 A.2d 480, which in turn relied upon *Schilbach v. Schilbach,* 171 Md. 405, 408, 189 A. 432 (1937). *See also Di Tommasi v. Di Tommasi* 27 Md.App. 241, 254–261, 340 A.2d 341 (1975). We do not agree, however, that, in the absence of ouster, *Colburn,* 265 Md. at 473, 290 A.2d 480, or a gift,[13] *Crawford,* 293 Md. at 311, 443 A.2d 599, contribution can be denied one entitled to receive it on the basis that that person, who was under an obligation to do so, failed to make child support payments, especially when the other party has a cause of action to recover those payments and has pursued it in the present action.

 Nor is the right to contribution in this case affected by the statute of limitations for a contract action. *See* Maryland Cts. & Jud.Proc.Code Ann. 5–101. In this regard, both the wife's and the trial court's reliance on *Maskell v. Hill,* 189 Md. 327, 55 A.2d 842 (1947) is misplaced. In that case, the Court held that the plaintiff's claim, brought in a

---

**13.** Neither party contends, and the record belies, that the payments made by the husband were intended as a gift to the wife.

partition suit, for rents and profits from co-tenancy property, in possession of the defendant until it was transferred to the defendant and his wife, was analogous to an action of account, which was cognizable at law and which was subject to a three year statute of limitations. The Court explained:

"If the remedy sought in equity is analogous to a remedy cognizable at law, and the statute of limitations prescribes a time within which the legal action must be instituted equity will follow the law and bar the action."

189 Md. at 337, 55 A.2d 842. Significantly, on a related issue, *i.e.*, the time during which a bill for partition must be brought, the Court observed:

The appellants in this case claim as a third special ground for their demurrer that the bill of complaint is barred by laches on account of the delay on the part of the appellee in filing the bill. A co-owner is under no obligation to file a bill for partition unless or until she sees fit.

189 Md. at 336, 55 A.2d 842. *See* 20 Am.Jur.2d, Co-tenancy and Joint Ownership, § 105, where it is said that "[i]f the suit is one for partition, the right to which is not barred by limitations, incidental relief by accounting between the parties may be available even as to claims which might be barred if asserted in an independent action." (footnote omitted) Although in some of the cases which have considered the issue, the period for which contribution was sought exceeded three years, those cases did not hold, or even intimate, that the claim for contribution was barred by limitations.[14] *See Pino*, 251 Md. 455–56, 248 A.2d 101 (period of seven years); *Schilbach*, 171 Md. at 405–07, 189 A. 432 (period of several years; the wife was in possession of the property from 1917 until her death in 1934 and her son and a niece claimed to have paid "taxes, Metropolitan District Assessment, assessments, interest on mortgage, fire insurance premiums" and other necessary expenses);

---

**14.** Although it may technically be deemed a contribution case, *Maskell* involved an attempt to recover profits and rents and not expenditures, the necessary effect of which is to increase the equity of the co-tenant.

*Hogan v. McMahon*, 115 Md. at 198, 80 A. 695 (payments made on mortgages beginning in 1887); *Young v. Young*, 37 Md.App. 211, 213–15, 376 A.2d 1151 (1977) (a period of approximately ten years; however, the court found, based on the facts, that contribution for that period should be disallowed) *DiTommasi*, 27 Md.App. at 243–44, 340 A.2d 341, (period from 1966–73). Moreover, "[e]quity will not allow the unjust enrichment of [a cotenant] at the [other's] expense." *Pino*, 251 Md. at 457, 248 A.2d 101, citing and quoting the Restatement of Restitution, Section 105 (1937).

As the claim in *Maskell* was for rents and profits received by the co-tenant in possession as to the receipt of which the other co-tenant should have been aware at the time that the parties separated, the untimely attempt to recover her share was properly barred by limitations. Unlike *Maskell*, here the party claiming contribution is the person who has been making the payments at issue and he seeks contribution as an offset to the wife's claim to one-half of the proceeds of the partition sale. Thus, his claim is incidental to the partition suit as to which there is no statute of limitations.

The wife also relies upon *Spessard v. Spessard*, 64 Md. App. 83, 494 A.2d 701 (1985), as justifying the trial judge's denial of the husband's request for contribution. That case is inapposite. It involved application of the Marital Property Act, a circumstance which the trial judge found inapplicable in this case. On remand, however, its teachings must be considered in resolving whether, under the Marital Property Act, it would be inequitable to allow the contribution requested by the husband.

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART. CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

COSTS TO BE PAID ONE–HALF BY APPELLEE AND ONE–HALF BY APPELLANT.